IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RAY C. FRANKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0278-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

I. <u>**Procedural Background**</u>

On December 21, 2001, plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, et seq. (Tr. 102-04), and for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. (Tr. 297-99). Plaintiff claimed a disability onset date of January 8, 2001. (Tr. 102, 297). Plaintiff's claims were denied, and he timely requested a hearing.

A hearing was held on October 21, 2003, and the ALJ found that plaintiff suffered from severe impairments including coronary artery disease with history of surgery; history of right rotator cuff tear with history; hypertension; and history of transient ischemic attacks[1]. (Tr. 21). However, the ALJ determined that none of these impairments met or equaled a listing. (Id). The ALJ further

---

[1] A passing mechanical obstruction (mainly arterial narrowing) of the blood supply. *Physician's Desk Reference ("PDR")Medical Dictionary, 1st ed., pg. 894, 1838.*

determined that although plaintiff could not perform his past relevant work, he retained the Residual Functional Capacity ("RFC") to perform a range of sedentary jobs which existed in significant numbers in the local and national economy. (Tr. 26-27).

For the following reasons, set forth herein, the ALJ's decision is reversed.

## II.     Factual Background

The facts are sufficiently set forth in the parties' briefs, and will be merely summarized here. At the outset of the hearing, the ALJ noted that plaintiff previously applied for disability insurance benefits in July of 2001, which were denied in October of 2001; however, plaintiff did not seek reconsideration. (Tr. 30-31). Nevertheless, in the decision on the latter case, the ALJ re-opened the October 2001, determination, and stated that benefits, if any, would be based on both applications. (Tr. 19 n.1). It is noted that in both applications, plaintiff alleged a disability onset date occurring in January, 2001. (Tr. 94, 102).

Plaintiff's Testimony

Plaintiff testified that he was 6'3" tall, and weighed 175 pounds. (Tr. 31-32). He was 44 years of age, and a high school graduate. (Tr. 32). Plaintiff lives at home with his mother, and has a son, 24 years of age. (Tr. 33). Plaintiff has been treated by Dr. Hinkson, a neurologist, for four months prior to the hearing; he has also been treated by Dr. Tannenbaum, a cardiologist, and Dr. Snyder. (Tr. 34, 39). Plaintiff was hospitalized in August of 2003, after experiencing lost vision followed

2

by double vision; with a diagnosis of possible stenosis[2] involving the middle cerebral artery. (Tr. 35, 296). Plaintiff takes approximately five medications for cholesterol, hypertension, and fluid retention, but he experiences no side effects. (Tr. 35-36).

Plaintiff feels that he cannot work because he has constant chest pains accompanied by nausea, shortness of breath, and is unable to stand for long periods of time. (Tr. 37). He experiences chest pains "a couple of times a day," which last from 15 to 45 minutes. (Id). He has taken nitroglycerin for approximately 2 years, and takes about 2 a week; a side effect are headaches which last 1 to 2 hours. (Tr. 37-38). The chest pains improved after plaintiff underwent surgery placing a stint and balloon in his chest, but the pains returned approximately 8 months later. (Tr. 38). Plaintiff loses his vision for about 30 seconds, once every month; followed by double vision for 2 to 3 hours. (Tr. 38-39). Dr. Hinkson explained to plaintiff that he had a narrow space in a vessel leading to his brain; short term treatment would include Plavix and aspirin, and surgery was a possibility in the future. (Tr. 39-40).

Plaintiff last worked in 2001, as a trash collector for about 3 months; he stopped as a result of chest pains. (Tr. 41-42). Prior to that, he worked as a truck driver for 2 years; he was required to lift lumber and pieces of concrete weighing anywhere from 30 to 60 pounds. (Tr. 43). All told, for 10 years plaintiff worked on and off in trash collection, either as a driver or a thrower. (Tr. 44). From 1991 to 1992, plaintiff buffed and cleaned floors. (Tr. 45-46). Plaintiff did not feel he could continue to drive a trash truck or buff floors due to his vision problems. (Tr. 46).

---

[2]A stricture of any canal; especially, a narrowing of one of the cardiac valves. *PDR Medical Dictionary, pg. 1673.*

3

Plaintiff usually rises early in the morning, he can bathe and dress himself, but his family helps him with chores around the house. (Tr. 46-47). Plaintiff drives to the store once a week, and occasionally attends car races and visits relatives. (Tr. 47-48). Plaintiff has no other social outlets, but was arrested for driving while intoxicated 15 years ago. (Tr. 48-49). Plaintiff denied present alcohol or substance abuse. (Tr. 49). Although plaintiff testified that he could not concentrate on something for a long period of time, he did not have problems concentrating on Nascar races or football games. (Tr. 50-51).

He reports difficulty sleeping at night because his arms and legs go to sleep, so he only sleeps for 2 to 3 hours; he lays around during much of the day, but doesn't really sleep. (Tr. 51-52). His blood pressure usually reads 170/99. (Tr. 52).

Plaintiff estimated that he could lift about 20 pounds; sit for 1 to 2 hours; stand for 45 minutes to an hour; and walk for about 50 yards before experiencing chest pains and shortness of breath. (Tr. 53-54). Plaintiff can bend over to pick up a pencil, reach above his head to retrieve a glass from a shelf, and grip items with his hand without difficulty. (Tr. 54).

The ALJ asked plaintiff if he could work as a gate tender requiring to him to periodically get up to check the identification of persons entering the premises; plaintiff testified that due to chest pains and an inability to focus, he could not perform such a job. (Tr. 55). The ALJ then asked plaintiff if he could work as a security systems monitor, requiring him to watch a bank of monitors to report theft or vandalism while receiving breaks in the morning and afternoon, and a lunch break; plaintiff testified that he could not perform such a job because of problems with his vision and he sees white dots when he turns his neck a certain distance. (Id). Finally, the ALJ proposed a job at

4

a hospital as an information clerk, requiring plaintiff to sit or stand as people approached seeking directions; plaintiff testified that he could not perform such a job due to chest pains. (Tr. 54-55).

When questioned by his attorney, plaintiff testified that he has trouble concentrating and remembering things. (Tr. 56-57). Prior to getting sick, plaintiff attended car races 25 to 30 times a year, now, he attends only a couple of times a year. (Tr. 58). Plaintiff explained that problems with his vision began in August of 2002. (Tr. 59). When he experiences chest pains, he takes nitroglycerin, and sits down to relax; sometimes, he foregoes the nitroglycerin because of the headaches, and after sitting for 30 to 45 minutes, the pain subsides. (Id). Plaintiff takes isosorbide, a slow acting nitroglycerin, on a daily basis. (Tr. 60). A stint and balloon were surgically inserted in plaintiff in August of 2000, and again in November of 2000; due to continued blockage, plaintiff's doctor advised him that further surgery may be necessary. (Tr. 60-61).

Vocational Expert Testimony

Vocational expert, Lesa Keen, testified that plaintiff's past work as a trash collector and truck driver is considered to be unskilled with a medium to very heavy exertional level. (Tr. 63). Plaintiff's work as a construction laborer is considered unskilled and very heavy. (Id). Plaintiff's work as a dump truck driver is classified as semi-skilled and medium to heavy exertional level; and the janitorial work is considered semi-skilled with a medium exertional level. (Id).

The ALJ asked Ms. Keen to consider a hypothetical person of the same age, education and work experience as plaintiff, who could lift 20 pounds occasionally and 25 pounds frequently, stand, sit or walk for 6 hours in an 8 hour workday. (Tr. 64). Ms. Keen opined that such an individual would not be able to perform plaintiff's past work in the medium to very heavy exertional level. (Id).

5

Ms. Keen explained that the ability to lift 20 pounds occasionally is typically found in the light exertional level, while the ability to lift 25 pounds moves into the medium exertional level. (Id).

Ms. Keen testified that, based on plaintiff's age, sedentary work would require an ability to lift up to 10 pounds occasionally, and negligible amounts of weight more frequently, the ability to sit 6 hours in an 8 hour work day, and frequent hand usage. (Tr. 64-65). Ms. Keen estimated that there were 26,000 unskilled, sedentary jobs in Missouri, and 1.1 million nationally; examples of such jobs include surveillance systems monitor, cashier, and telephone solicitor. (Tr. 65). Ms. Keen further estimated that there were 375,000 light, unskilled jobs in Missouri, and 17.1 million nationally; examples include a gate tender, bench assembler, and light packer. (Id). Approximately 15 to 20% of such jobs permit the worker to alternate sitting or standing. (Tr. 66).

The ALJ asked Ms. Keen what level of exertion plaintiff could perform if he could lift 15 to 20 pounds; sit for 1 to 2 hours; stand for 45 minutes to an hour; walk 50 yards before experiencing chest pain and shortness of breath; bend, reach, and grip without difficulty. (Id). Ms. Keen opined that plaintiff could perform the full range of sedentary work and a limited range of light, unskilled work with a sit/stand option. (Id). If there was a need to lie down, such a person would be unemployable. (Tr. 66). However, Ms. Keen testified that if the person was unable to see for 30 seconds once a month, all work would not be precluded. (Tr. 66-67). For example, such a person could not perform jobs requiring driving, working around dangerous machinery, or heights; thus, the job of bench assembler would not be eliminated. (Tr. 67). According to Ms. Keen, there were 5,000 bench assembler jobs in Missouri, and 160,000 nationally. (Id).

Ms. Keen opined that if plaintiff did not need to lie down as often as testified, and only lost his vision for 30 seconds, he could perform a light, sit/stand job as a bench assembler. (Tr. 67).

6

However, if he also experienced double vision for 1 to 2 hours after losing his vision for 30 seconds, it would preclude employment. (Tr. 67-68). If plaintiff occasionally experienced chest pain, and, due to the effects of the nitroglycerin, suffered from headaches lasting 30 minutes, it would negatively impact on his ability to sustain employment. (Tr. 68).

### III. Standard of Review

In order to affirm the ALJ's findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole. Giles v. Barnhart, 368 F.Supp.2d 924, 940 (N.D.Iowa 2005). Substantial evidence is more than a mere scintilla, it means relevant evidenced a reasonable mind might accept as adequate to support a conclusion. Giles, at 940. The court must take into account evidence which fairly detracts from the ALJ's findings. Id. Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Id. The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. Id.

### IV. Analysis

In determining whether plaintiff is disabled, the ALJ utilized the familiar five-step sequential analysis, and at step one, found that plaintiff had not engaged in substantial gainful employment[3],

---

[3]The ALJ noted, however, that plaintiff worked from March 30 through April 5, 2001, which was after the alleged onset date of disability. (Tr. 21). This was previously found to be an unsuccessful work attempt, and in an attempt to give plaintiff the benefit of the doubt, the ALJ

7

and, at step two, the ALJ found that plaintiff suffered severe impairments including coronary artery disease with history of surgery; history of right rotator cuff tear with surgery; hypertension; and history of transient ischemic attacks. (Tr. 21). However, at step three, the ALJ determined that although severe, the impairments did meet or equal a listing. (Id). At step four the ALJ found that plaintiff did not retain the RFC to perform his past work; but, at step five, the ALJ concluded that plaintiff could perform other work; i.e. bench assembler. Plaintiff contends that the ALJ erred in concluding that his allegations of pain were less than credible, and that he could perform other work.

Credibility

When evaluating the credibility of a claimant's subjective complaints, the ALJ may not disregard them "solely because the objective medical evidence does not fully support them." Giles v. Barnhart, 368 F.Supp.2d at 943; Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). However, subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. The following factors should be considered in evaluating a claimant's subjective impairments: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Id.

Here, the ALJ found that the medical evidence failed to support plaintiff's allegations of pain. (Tr. 21). In so doing, the ALJ noted that both of the coronary surgeries occurred prior to plaintiff's stated disability onset date, and even subsequent to that date, there were no records of

---

agreed. (Id). However, the ALJ stated that he was disturbed by plaintiff's failure to mention this work effort (which produced significant income) on his current application, and found that it reflected negatively on plaintiff's credibility. (Id; n.2).

8

medical treatment. (Tr. 21-22). Evidence of treatment received during 2002, and 2003, did not indicate remarkable adverse findings regarding plaintiff's complaints of chest pain and vision problems. (Tr. 22). The ALJ also found plaintiff's daily activities to consist of "more activity than most individuals who are as disabled as he alleges," and noted that no treating or examining physician advised plaintiff to lie down during the day. (Tr. 23). The ALJ also noted that plaintiff did not have a good work history, for between 1988 and 2001, plaintiff worked for at least 15 different employers, and during much of that time plaintiff earned less than $10,000 a year[4]. (Tr. 24). Moreover, plaintiff's stated reasons for leaving his last job, i.e. for personal reasons, further detracted from the credibility of the claim. (Id).

In viewing the medical records, the ALJ correctly notes that although plaintiff underwent two operations due to an undisputed heart condition, both surgeries occurred prior to the stated disability onset date. In and of itself, however, this does not lessen the credibility of plaintiff's allegations of pain. For, it would appear to be a logical sequence of events; that is, upon experiencing shortness of breath, accompanied by chest pain, surgery became a necessary procedure in an attempt to alleviate plaintiff's discomfort. It therefore follows, that while intending to be remedial, the surgeries arguably failed to eliminate plaintiff's impairments, ultimately forcing him to forego work, claiming a disabling condition.

Further, the ALJ somewhat overstated evidence favoring denial of the claim. For instance, he relied on the findings of consultative examiner Dr. Craig Lofgreen, and notes that he found no

---

[4] According to the ALJ, the combination of Disability Insurance Benefits and Supplemental Security Income payments exceeded plaintiff' prior work income. (Tr. 24). When other sources of income are included, i.e. Medicare, Medicaid, Food Stamps, and Housing Assistance, plaintiff had little motivation to work. (Id).

9

medical reason why plaintiff would be unable to work. (Tr. 22-23, 230-31). Actually, Dr. Lofgreen stated that it was "not clear that the patient is substantially precluded from reasonable employment activity ...." (Tr. 230); hardly a firm endorsement of plaintiff's ability to work.

It has been held that the findings of one-time examining physicians or the opinions of physicians who have not examined the claimant are to be given little weight. Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002) (report by a consulting physician who examines claimant once is not substantial evidence in a social security case); see also, Marshall v. Barnhart, 228 F.Supp.2d 938 (S.D.Iowa 2002). However, here, there is scant medical treatment from a treating physician. As such, the ALJ also relied on the opinion of Dr. Robert Hughes who, in cursory fashion, states that plaintiff's RFC includes the ability to lift/carry 20 to 25 pounds; sit/stand/walk for 6 hours; and to push/pull without limitation. (Tr. 255). The ALJ also relied on the physical-RFC submitted by an unnamed source whose findings were in reliance on those proffered by Drs. Lofgreen and Hughes. (Tr. 256-63).

The ALJ erred in concluding that plaintiff's daily activities conflicted with his allegations of disabling health problems. "[I]n selecting employees employers are concerned with substantial capacity, psychological ability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs by hiring a person with serious physical or mental problems." Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001); quoting, Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984). The important issue is whether plaintiff has "the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Forehand v. Barnhart, 364 F.3d 984 (8th Cir. 2004); quoting, McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982).

10

The ALJ erred in discrediting plaintiff's allegations of fatigue due to the absence of physician recommended evidence that plaintiff lie down during the day. Holmstrom v. Massanari, 270 F.3d 715, 722 (8th Cir. 1997) (the fact that no physician recommended that plaintiff lie down during the day is not inconsistent with plaintiff's need to lie down; for the need to lie down is a symptom and not a treatment). It seems pertinent, however, that there is an absence of complaints to a doctor or of prescriptions or use of sleeping aids.

Further error occurred due to the ALJ's failure to consider the side effects of medication ingested by plaintiff. Plaintiff testified that while nitroglycerin was prescribed to lessen the effects of his coronary disease, it results in headaches lasting 1 to 2 hours. (Tr. 37-38). This was corroborated by Dr. Lofgreen who noted that plaintiff recounted to him that he did not take the nitroglycerin unless absolutely necessary due to the headache side effects[5]. (Tr. 230). The ALJ's failure to consider this side effect in his decision constituted error[6]. Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997). Moreover, the ALJ's failure to include this side effect in the hypothetical posed to the vocational expert also constituted error. Porch v. Chater, at 572.

It is well settled that testimony from a vocational expert constitutes substantial evidence only when the hypothetical posed captures the concrete consequences of claimant's impairments. Porch v. Chater, 115 F.3d at 572; see also, Meinders v. Barnhart, 195 F.Supp.2d 1136 (S.D.Iowa 2002). Thus, the ALJ's hypothetical question must include those impairments that are substantially supported by the record as a whole. Porch v. Chater, at 572. Here, upon further questioning by the

---

[5] One of the stated side effects of ingesting nitroglycerin are headaches. *The Merck Index, 12th ed., pg. 1135-36.*

[6] In his decision, the ALJ referred to various findings of plaintiff's visit to Dr. Lofgreen (Tr. 22-23), yet, no mention is made of plaintiff's reported headaches.

11

ALJ, the vocational expert testified that if plaintiff did not have to lie down during much of the day, as testified, and experienced limited vision only a few times a month, he could perform a light, sit/stand position in a bench assembly job. (Tr. 67). However, if in addition to losing his vision for 30 seconds, followed by double vision for 1 to 2 hours, plaintiff would be precluded from work. (Tr. 68). Further, experiencing headaches lasting 30 minutes a couple of time a week would also "negatively impact" plaintiff's ability to sustain employment. (Id). The last remark is somewhat ambiguous.

An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole. Porch v. Chater, at 572. Plaintiff's complaints of headaches due to ingestion of nitroglycerin is undisputed, and has been established as a side effect of this medication. Recent medical reports indicated diagnoses of blurred vision with vision loss, and possible brainstem ischemia. (Tr. 289-94). Due to plaintiff's complaints of blurred vision, a recent Magnetic Resonance Angiography of the Circle of Willis was performed, and indicated a tortuous right middle cerebral artery. (Tr. 296). The record does not contain evidence of additional testing, and the ALJ should have required an examination to determine the extent that this impairment affects plaintiff's ability to sustain employment. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case).[7] Because the ALJ credited an opinion by the vocational expert that was based on a faulty hypothetical including absence of significant side effects of medication and an unsupported assertion that plaintiff could perform a significant range of sedentary jobs cannot constitute substantial evidence. Porch v. Chater, at 572.

---

[7] On remand the issue of depression may also be pursued, if discretion so dictates.

12

Accordingly, it is hereby

ORDERED that plaintiff's request for judgment is GRANTED, and the decision of the Commissioner of Social Security is REVERSED. The above captioned case is REMANDED to the Commissioner for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court is directed to enter judgment in favor of plaintiff.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

August 1, 2005

Kansas City, Missouri

13